UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AARON RAPP, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:23-CV-253-HAB ) |
| INTEGRITY MARKETING GROUP, LLC, et al., | ) ) ) |
| Defendants/Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| RYAN MONTALTO and DONALD TUTTLE, | ) ) ) |
| Third-Party Defendants. | ) |

**OPINION AND ORDER**

Many have received unsolicited marketing calls. Few answer. Even fewer call back. Almost no one attends a seminar pitched by the unsolicited call. And maybe one in eight billion attends that seminar out of spite.

The Court is oh so fortunate to have found that unicorn. After receiving a telemarketing call at the crack of 7:30 a.m., Plaintiff Aaron Rapp ("Rapp") turned cellular Sherlock Holmes. Through a series of voicemails and telephone conversations, Rapp signed up for "The Million Dollar Agency Workshop," a Zoom recruitment seminar for insurance agents allegedly put on by Defendants Integrity Marketing Group, LLC ("IMG"), First Family Life, LLC ("FFL"), and Montalto United Insurance Agency, LLC ("MUIA"). Rapp then attended the seminar, which featured Third-Party Defendants Ryan Montalto ("Montalto") and Donald Tuttle ("Tuttle") as speakers.

Apparently, Rapp did not develop a million-dollar insurance agency after attending the seminar, so he's turned to the federal courts to find his riches. The operative complaint is a fifteen-page class action alleging violations of the Telephone Consumer Protection Act ("TCPA") against IMG, FFL, and MUIA. (ECF No. 12). MUIA then brought a third-party complaint for indemnification and contribution against Montalto and Tuttle. (ECF No. 18). Tuttle then filed a cross-claim (which probably should have been titled a third-party counterclaim) for indemnification and contribution against MUIA. (ECF No. 23).

Now before the Court is MUIA's motion to dismiss Tuttle's cross-claim. (ECF No. 24). MUIA argues that the cross-claim alleges "zero facts . . . tying [MUIA] in anyway to Mr. Tuttle's unlawful conduct." (*Id*. at 4). Tuttle has not responded. Despite that lack of response, the Court finds that the cross-claim alleges enough to allow it to proceed. The motion to dismiss will be denied.

I.   **Factual Allegations**

A.   *Amended Complaint*

On January 25, 2023, Rapp, a long-time subscriber to the National Do Not Call Registry, received several unsolicited phone calls. The first, at 7:36 a.m., "rudely awakened" Rapp from his peaceful sleep. Rapp didn't answer, but the caller left a message advertising "The Million Dollar Agency Workshop" being held the next day.

Rapp received the next call at 9:42 a.m. This time he answered and spoke with an individual with "limited proficiency in English." That call "abruptly ended" when Rapp asked how the caller got his phone number. So Rapp called back and talked to "Dawn." Dawn gave Rapp additional details about "The Million Dollar Agency Workshop." Because Rapp "desired to learn more about

2

the source of the unlawful telemarketing," he signed up for the seminar. Rapp then received calls at 10:16 a.m. and 6:12 p.m., confirming his participation.

Rapp attended the seminar the next day. Montalto and Tuttle spoke, with 28 other people in attendance. After the seminar, Rapp spoke with Montalto. Montalto confirmed that he hired a third-party company to oversee the recruiting process for the seminar. Rapp received several phone calls from IMG, FFL, and MUIA over the next twelve months advertising an appointment with "management" for a position.

Rapp alleges that the foregoing violated the TCPA. He has brought a claim on his own behalf, and on behalf of the following proposed class:

> All persons within the United States, to whom Defendants and/or a third party acting on Defendants' behalf, made two or more telephone solicitations that promoted Defendants' products or services, to a cellular telephone number, while the recipient's telephone number was registered on the National Do Not Call Registry for at least 31 days, within any twelve-month period within the four (4) years prior to the filing of the Complaint.

B.   ***Third-Party Complaint***

MUIA, in turn, brought a third-party complaint against Montalto and Tuttle. MUIA explains that, prior to 2020, it was an insurance agency operated and managed by Montalto. Montalto then sold his equity interest in MUIA to IMG and was named President of MUIA. At some point, the relationship between Montalto and IMG deteriorated so much that Montalto resigned to avoid termination. IMG and Montalto are engaged in "ongoing litigation over [Montalto's] business conduct."

As MUIA tells it, "[a]ny alleged calls . . . identified in the Amended Complaint called on behalf of Mr. Montalto in his unilateral capacity and in violation of his employment agreements and obligations." MUIA alleges that it has policies that require compliance with the TCPA, and that Montalto's actions violated those policies. Thus, it alleges, "Messrs. Montalto and Tuttle are

3

solely responsible for their violations of the TCPA." The third-party complaint states three counts for contribution and indemnification against Montalto and Tuttle, and one count for breach of contract against Montalto alone.

**C.    *Cross-Claim***

Tuttle then answered the third-party complaint and a cross-claim against Montalto and MUIA. In the answer, Tuttle admits that he was a speaker at "The Million Dollar Agency Workshop," but denies any involvement in the alleged TCPA violations.

The cross-claim largely recites the allegations from Rapp's complaint. He then alleges that "[a]ll acts were done while Mr. Montalto was working for or through [MUIA]." Finally, he alleges,

> Cross-Claim Defendants, Montalto and Montalto United are liable, should any relief be granted on Mr. Rapp's Amended Complaint or class-wide basis for the unlawful actions of the Cross-Claim Defendants. This may include, but it is not limited to, contribution to or indemnifying against all loses sustained by Tuttle in defending the allegations of Mr. Rapp and/or the potential class.

**II.    Legal Analysis**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint[1], not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads

---

[1] The Rule 12(b)(6) standard does not change when evaluating a counterclaim. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

All that is required for common-law claims for contribution is "the incurrence of a monetary obligation that is attributable to the actions of another party." *Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008). Similarly, the "right to indemnity may be implied at common law only in favor of one whose liability to another is solely derivative or constructive and only against one whose wrongful act has caused such liability to be imposed." *Mullen v. Cogdell*, 643 N.E.2d 390, 400 (Ind. Ct. App. 1994). Both claims, then, require little more than that the claimant has been held responsible for someone else's conduct.

Tuttle's allegations, while not a model of thorough pleading, claim that the TCPA violations were committed by Montalto while Montalto was acting as an agent of MUIA. So Tuttle alleges that Montalto and MUIA should be responsible for "contribution to or indemnifying against" any losses sustained by Tuttle in this suit. That strikes the Court as enough.

Much of MUIA's argument is, essentially, that it is not responsible for the TCPA claims. That may be. But it is not the duty of the Court, at this stage, to evaluate Tuttle's cross-claim. The Court can only decide whether MUIA has fair notice of Tuttle's claim and if that claim is facially plausible. The Court finds that Tuttle has crossed both hurdles.

**III.    Conclusion**

For these reasons, MUIA's motion to dismiss (ECF No. 24) is DENIED.

SO ORDERED on April 16, 2024.

s/ *Holly A. Brady*<br>CHIEF JUDGE HOLLY A. BRADY<br>UNITED STATES DISTRICT COURT